[No. 2018.]

THE COLORADO SCHOOL LAND LEASING AND MINING COM-
PANY v. PONICK.

1. CORPORATIONS—ASSIGNMENT OF CLAIM—DESCRIPTION.

An assignment of a claim against The Colorado School Land Leasing
and Mining Company in which assignment the words were trans-
posed and the claim described as against The Colorado School Land
Mining and Leasing Company was a sufficient description to identify
the claim, and the assignment was not invalid because of such mis-
take in the name of the corporation.

2. EMPLOYER AND EMPLOYÉ—WAGES—SPLITTING DEMANDS—REDUC-
ING AMOUNT.

A creditor may not split up his demand so as to make several causes of
action out of one without the consent of his debtor, but he may
abate a portion of his claim without asking his debtor's permission.
And where an employé assigned his wages for a month, stating the
amount and that it was all that was owing to him, the employer
cannot object to the assignment on the ground that the amount as-
signed was less than the amount due the assignor.

3. EVIDENCE—RECEIPTS.

A receipt for money due is only *prima facie* evidence of payment and
may be contradicted by parol.

4. EMPLOYER AND EMPLOYÉ—WAGES—LOAN TO MANAGER — EVI-
DENCE.

Where employés of  a corporation were informed by the company's
manager that the money had not come to pay them, and that if they
would wait a few days they should receive their pay with interest,
which proposition the employés accepted, and afterwards at differ-
ent times payment was promised by officers of the company, it was
not a loan of their wages to the manager, but an extension of time
to the company for payment.

5. APPELLATE PRACTICE—CREDIBILITY OF WITNESSES—VERDICT OF
JURY CONCLUSIVE.

Where witnesses contradict each other, the question of their credibility
is for the jury to determine, and the verdict of the jury is conclusive
on the appellate court.

*Error to the County Court of El Paso County.*

Mr. SAMUEL H. KINSLEY, for plaintiff in error.

Messrs. ORR & MCKESSON, for defendant in error.

THOMSON, J.

Fred Ponick, J. B. Fraser and Dan McLaughlin worked for The Colorado School Land Leasing and Mining Company during June, July, August and September, 1897. Their wages for June, July and September were paid to them in full, but they asserted that they received no pay for August. Ponick brought this suit to recover his own wages for August, and those of Fraser and McLaughlin, alleging that the latter had assigned their claims to him. The trial resulted in a verdict in the plaintiff's favor for $230.50. Judgment followed the verdict, and the defendant appealed.

The indebtedness to Fraser is conceded, and with respect to his claim, the only contention is that the assignment by him is insufficient. Fraser and McLaughlin subscribed the same writing; if the assignment is not good as to one, it is not good as to the other; and this action in the name of Ponick can not be maintained upon the claim of either of them. The first objection to the assignment is that it describes the debt as owing from The Colorado School Land Mining and Leasing Company, whereas, the name of the defendant, and the name by which it was sued, was The Colorado School Land Leasing and Mining Company. The objection is not very ponderous. The work was done for the defendant company. In attempting to give the name of the company for the purpose of identifying the debt, the writer transposed the words "Leasing" and "Mining." But it is entirely evident that it was the claims against the defendant, of Fraser and McLaughlin, which he intended to describe, and it is entirely evident that it was their claims against the defendant which Fraser and McLaughlin intended to assign. The mistake in the name of the company did not render the assignment insufficient. The other objection to the assignment is that it was only partial, that is, that the sums assigned were less than the true amounts, and that it was not shown that the defendant assented to the assignment. If a creditor sees fit to reduce the amount of a debt owing to him, we confess our inability,

at this moment, to see what right the debtor has to complain. It is true that, as a general rule, a creditor may not split up his demand so as to make several causes of action out of one, without the consent of the debtor. *Snedden* v. *Harmes*, 5 Colo. App. 477. But it by no means follows that he may not abate a portion of his claim without asking his debtors' permission. In the body of the writing, the assignors described the claims as embracing all that was owing to them, and a final judgment in this action for or against the plaintiff would be a bar to any other suit for wages of the assignors earned in August, 1897. There is nothing in this objection.

With these objections out of the way, the right of the plaintiff to a judgment upon Fraser's claim is admitted, and we need say nothing further respecting it; but a recovery upon his own and McLaughlin's demands is resisted upon other grounds, it being contended that the plaintiff and McLaughlin loaned the money to Mr. Groesbeck, the defendant's manager, and receipted for it in full to the company. The money due for August was never paid, and there was positive testimony that it was not loaned to Groesbeck. The wages for August were payable on the 10th day of September. There was evidence that on that day, a Mr. Baker, who was a foreman for the company, came to the men and said that the money to pay them had not arrived, and if they would wait for twenty days, they would receive their pay, with interest; that they accepted the proposition; that payment was afterwards, at different times, promised by officers of the company; that sometime in October, the men signed the pay roll for August, on the faith of some representation made to them, and afterwards, at the instance of the company's agent, subscribed and verified certain affidavits, which we shall notice shortly. The defendant relies upon those affidavits to overthrow the testimony that the money was not loaned to Groesbeck. It was testified that the parties were induced to make the affidavits on the representation to them of the company's agent that he desired to ascertain how much the company owed, and on his promise that he would assist them

in getting their money.   An affidavit was procured from the
plaintiff and McLaughlin, and also from Fraser.   We do
not find Fraser's in the record.   The affidavits of the plain-
tiff and McLaughlin are substantially alike.   The affidavit
of the plaintiff stated that he worked for the company dur-
ing June, July, August and September, 1897, but that he
received no pay for August; that on the 10th day of Sep-
tember, the foreman, Baker, stated to him and the others that
Groesbeck desired to retain their wages for twenty days,
and that himself and all the other men working on the prop-
erty, consented; that about the 15th or 18th day of Sep-
tember, Baker presented the pay roll for August to the men,
and they all, including the plaintiff, signed it; and that when
the plaintiff signed it, payment of his August wages was
promised, to be made on the 1st day of October.

Counsel points us to the fact of the signatures to the pay
roll, and to the statement that the men consented to the re-
tention by Groesbeck of their wages for twenty days, as con-
tradictory of the testimony that the company still owed the
money, and that the money was not loaned to Groesbeck.
By signing the pay roll the men acknowledged the receipt
of the money due them for August.   But a receipt is only
*prima facie* evidence of the fact it states, and may be contra-
dicted by parol.   It abundantly appears that the money was
never paid, and that the signing of the receipts was induced
by promise of payment in the future.   The statement in the
affidavit that the retention of the wages by Groesbeck for
twenty days was consented to, does not necessarily mean
that the money was loaned to Groesbeck.   Groesbeck repre-
sented the company; Baker, who made the request upon
which the consent was given, also represented the company;
he did not represent Groesbeck; the money to pay the men
was handled by Groesbeck, and the men might well have
understood that Groesbeck was to retain the money in his
representative capacity, that is, for the company, and not for
himself.   That such was, in fact, the understanding, there is
positive evidence.   But Baker represented to the men, as a

VOL. XVI—31

reason why they were not paid on the spot, that the necessary funds had not arrived, and promised that if they would wait twenty days, their money would be paid to them, with interest. The men assented. This throws light on the language of the affidavits. The men would not push the company for their money for twenty days, and as it was through Groesbeck that all payments to the men were made, he, as the company's agent, was authorized to retain their wages for that time. It is clear to us from the whole evidence, that instead of loaning their wages to Groesbeck, thay gave him, as the company's agent, an extension of twenty days for the payment of the money; and this view finds support in the promise of the president and other officers of the company, made long afterwards, that the men should be paid.

Mr. Codding, one of the company's agents, induced the making of the affidavits by representing that he wanted to find how much the company owed, and promising his assistance to the men, in obtaining their money. He was a witness for the defendant, and contradicted the plaintiff in a number of important particulars. But the jury believed the plaintiff and disbelieved him, and their judgment of the credibility of the witnesses is conclusive here. It does not appear that any suit for the overdue wages was then threatened; the men were manifesting no impatience; the reason given to them, and the reason given to the court, why the affidavits were wanted, are alike unsatisfactory, and a strong suspicion attaches to the transaction that the design was to entrap the men into the use of ambiguous language which might be given a harmless meaning to them, but, by another interpretation, might be used to defeat their claims.

Complaint is made of two instructions; but the objections urged against them have already been considered in our discussion of the evidence, and a result reached adverse to counsel's contention.

Let the judgment be affirmed.

*Affirmed.*